FILED

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

97 AM 10: 08

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **JAMES L. GRAHAM**, | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-96-N-2469-W |
| | ] | |
| **THE ASSOCIATES FINANCIAL SERVICES COMPANY OF ALABAMA, INC.**, | ] ] ] | |
| | ] | |
| Defendant(s). | ] | |

ENTERED
JUN 17 1997

**Memorandum of Opinion**

**I.   Introduction**

James Graham filed this civil action against The Associates Financial Services Company of Alabama, Inc. ("Associates") on August 23, 1996, in the Circuit Court of Tuscaloosa County, Alabama. The complaint alleges violations of The Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, the Alabama Min-Code, Ala. Code. § 5-19-1, *et seq.*, and various state law fraud and usury laws. The defendant removed the action to this court on September 20, 1996, and filed a counterclaim for the amount due on its contract and for attorney fees on December 13, 1996. The court has for consideration the motion for summary judgment on the complaint and counterclaim filed by Associates on February 14, 1997. For the reasons stated herein the motion will be granted in all respects.

31

## II.    Undisputed Facts[1]

On January 20, 1993, Associates of Alabama loaned James L. Graham $21,587.53 which was secured by a real estate mortgage on a dwelling owned by Mr. Graham. The defendant disbursed the proceeds of the loan as follows:

| | |
|---|---|
| Payoff of first loan | $13,147.05 |
| Payoff of second loan | 2,152.22 |
| Credit Insurance | 1,936.40 |
| Recording Fees | 35.75 |
| Appraisal Fee | 325.00 |
| Title Insurance | 269.00 |
| Prepaid Finance Charge | 1,027.97 |
| Proceeds to Plaintiff | 2,694.14 |

In addition, the plaintiff received the following documents on or before January 20, 1993:

> Notice of Right to Cancel
> Transfer of Servicing Disclosure Statement
> Variable Rate Disclosure Statement
> Mortgage Deed
> Loan Agreement
> Truth in Lending Disclosure Statement
> Application for Credit Insurance

The plaintiff obtained a Variable Interest Rate Loan for which the initial interest rate was 14.31%. Associates of Alabama disclosed, pursuant to the Truth in Lending Act (TILA), that the plaintiff's initial Annual Percentage Rate was 15.29%. The TILA statement also disclosed the finance charge, the amount financed, and the payment schedule. The Variable Rate Disclosure Statement, which Mr. Graham acknowledged receiving, clearly and conspicuously disclosed the features of plaintiff's variable rate loan. Associates also

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

2

sent a booklet describing the various variable rate loans with adjustable rates. In addition, Associates explained to the plaintiff his right to rescind the Loan Agreement within three days of the transaction. Throughout 1994 and 1995, Associates made all required disclosures to the plaintiff concerning his interest rate adjustments for the loan.

> Mr. Lanier agreed to the following specific provisions concerning default:
>
> I will be in default if I fail to pay any payment or part of a payment on time or if I fail to comply with any of the terms of the Real Estate Mortgage on the real estate given as security for this loan.
>
> If I default, you have the right to declare the unpaid amount of my loan immediately due and payable without giving me notice or asking me to pay. If you declare the balance of my loan due and payable, you have the rights and remedies provided for in the Real Estate Mortgage that secures this loan and to require me to pay any deficiency.
>
> * * *
>
> I agree to pay reasonable attorney's fees if this loan agreement is referred for collection to an attorney who is not your salaried employee. Fees will not be in excess of 15% of the unpaid debt.

*Loan Agreement* at 1 (*see* Defendant's Tab 1, Exhibit A). The plaintiff paid only interest charges on his loan through May 31, 1996, and has made no payments on the loan since that date. The outstanding balance on the loan is in the principal amount of $21,587.53, plus accrued interest (from May 31, 1996 to December 13, 1996) in the amount of $1,916.54, plus accumulated late charges of $364.88, plus interest as specified in the Loan Agreement from December 13, 1996, to the date of full and final payment.

## III.  **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

3

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

4

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.

*Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A. Summary Judgment on the Plaintiff's Claims

The defendant moves for summary judgment as to all of the plaintiff's claims and on its own counterclaim. The court will address each in turn.

#### 1. **Fraud and Misrepresentation**

The plaintiff makes the following allegations that sound in state law fraud and misrepresentation:

> 1.) Plaintiff brings this action on behalf of himself as plaintiff against the Associates Finance Service, defendant, for the purpose of recovering damages against the defendant for intentionally, willfully, and maliciously inducing plaintiff to enter into a fraudulent and unconscionable contract, showing the court as followings: [sic]
>
> * * *
>
> 4.) In the loan transaction, defendant failed to comply with the requirements of the laws and statutes set forth in the affidavit attached hereto in that defendant deliberately induced plaintiff to enter into the fraudulent and unconscionable contract . . . .
>
> 5.) The fraudulent and unconscionable contract is a misrepresentation of material facts, and was made willingly to deceive and defraud

6

>        plaintiff, which was justifiably relied upon by plaintiff under the circumstance, [sic] and caused damages proximate consequence. [sic]
>
> 6.)    When a creditor engages in "illegal, fraudulent or unconscionable conduct", inducing an unconscionable aggreement [sic] or contract term violating of this section, [sic] the court must not enforce the unconscionable term and any security interest taken in violation of that section is void.
>
> * * *
>
> 9.)    Whereas, pursuant to §5-19-1, under the Mini-Code of Alabama, it is a material fact that borrower is entitled to know before completing the loan closing and it is a material fact that mortgage broker has an obligation to disclose to borrower. Either constructive or intentional, and misrepresentation of material facts known to the creditor, to the detriment of debtor or third parties who relied reasonably thereon. (Implied to hold creditors to a duty of fair dealing with debtors).
>
> * * *
>
> 18.)   Whereas, defendant knew or had reason to believe that their actions and conduct was merely for the purpose of revenue for the defendant in that defendant knew or had reason to believe that the fraudulent contract, by it's [sic] own terms, would mislead and decieve [sic] plaintiff.

*Complaint* at 3-7 (citations omitted). These allegations sound in Alabama fraud law. Accordingly, the applicable statute of limitations is Ala. Code § 6-2-38(l). That section provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years." Ala. Code § 6-2-38(l). Alabama law also provides that

> [i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to pursue his action.

7

Ala. Code § 6-2-3. That section tolls the running of the statute until the plaintiff discovers, or reasonably should have discovered, the injury. *Fabre v. State Farm Mut. Auto Ins. Co.*, 624 So. 2d 167, 168 (Ala. 1993). The Alabama Supreme Court has held:

> If a person signs or receives a document that discloses facts inconsistent with the facts allegedly misrepresented to that person previously, that person is deemed to have discovered the fraud upon signing or receiving the document, even if the person did not read the document.

*Harrell v. Reynolds Metals Co.*, 495 So. 2d 1381, 1387 (Ala. 1986).

The evidence is undisputed that when the plaintiff took out his loan in 1993, he signed and received documentation that should have put him on notice that the loan he was receiving was a variable rate loan.[2] The TILA statement clearly advised: "This is a variable rate loan." *Disclosure Statement* at 1 (*See* Tab 1, Exhibit C). Mr. Graham signed this document on the line *directly next to* that language. *Id.* The loan agreement itself, under the section "Agreed Rate of Interest" states: "This is a variable interest rate loan and the interest rate will increase or decrease with changes in the bank prime loan rate." *Loan Agreement* at 1 (*See* Tab 1, Exhibit A). The section then goes on to explain *exactly* how the plaintiff's interest will be calculated. *Id.* It is also undisputed that the plaintiff received a "Variable Rate Disclosure Statement" in January 1993. *See Variable Rate Disclosure Statement* (*See* Tab 1, Exhibit D).

All of these documents apprised the plaintiff of exactly how much interest he was being charged, and how that interest rate could change. The plaintiff received most, if not

---

[2] The plaintiff is not specific as to the particular fraudulent acts he is complaining of. However, his complaint is littered with accusations that the interest rate he was charged was usurious. Accordingly, the court assumes the plaintiff is contending that he was defrauded with respect to the terms and conditions of the interest rate of his loan.

8

all, of these documents at the time he signed the loan contract. Fraud with respect to any aspect of the loan agreement, if it existed, was discoverable at that time. Thus, the statute of limitations for the plaintiff's state law fraud action began to run in January of 1993.[3] Because more than two years passed before this suit was filed, the plaintiff's fraud counts are time barred under Ala. Code § 6-2-38(l).

### 2. **Truth in Lending Allegations**

The plaintiff makes the following Truth in Lending Act allegations:

> 7.) Whereas, pursuant to the Truth in Lending Act, the Act mandates full disclosure of credit terms and a uniform method for stating those terms in order to enable consumer better to compare and make an informed choice about credit. The total finance charge was not expressed, either accurately or clearly or conspicuously or more clearly as an annual percentage rate or rates and no explanation of how the balance was determined on which the finance charge was computed.

\* \* \*

> 20.) Whereas, the <u>Truth in Lending Act</u> must be liberally construed in favor of the consumer and Act [sic] impes [sic] strict liability in sense [sic] that absolute compliance is required and even technical violations will form the basis of liability.

*Complaint* at 4, 7 (emphasis in original) (citations omitted).

Under the Truth in Lending Act, the plaintiff may make a claim for statutory damages or recission. The Act provides that actions for statutory damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). In the case of actions based on a violation of the act at the time of closing, "[t]he violation 'occurs'

---

[3] The plaintiff has produced no evidence that the defendant affirmatively misrepresented any material fact to him in connection with the transactions in question.

when the transaction is consummated." *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984). The plaintiff consummated his loan transaction on January 20, 1993. This action was filed on August 23, 1996--three and one-half years later. Accordingly, to the extent his action is one for statutory damages based on a violation of the statute at the time of closing, it is time barred.

Pursuant to Regulation Z, Associates of Alabama is required to make disclosures "[a]t least once each year during which an interest rate adjustment is implemented without an accompanying payment change, and at least 25, but no more than 120, calendar days before a payment at a new level is due . . . ." 12 C.F.R. § 226.20(c). These disclosures must "reflect the terms of the legal obligation between the parties." 12 C.F.R. § 226.17(c)(1). The evidence demonstrates that Associates made these required disclosures by placing the notices in the mail on January 5, 1994, and January 4, 1995. *See* Tab 1 at Exhibit F. In order to make a claim for a violation with respect to these disclosures the claim must have been made within one year from each of these disclosures. Because the claim was not filed until August 23, 1996, the plaintiff's claim, to the extent it claims statutory TILA damages based on interest rate adjustments and disclosures is time barred.[4]

Lastly, in the event of a material non-disclosure, the debtor may bring a recission action under the Truth in Lending Act only within three years of the date of the loan transaction. 15 U.S.C.A. § 1635(f). The plaintiff did not do so, and so, to the extent his claims request a recission under the Truth in Lending Act, they are time barred.

---

[4] The evidence also establishes that the defendants continued to make all required disclosures, in their appropriate form, even after August 23, 1995. Therefore, to the extent the plaintiff's claims are based on improper disclosures, after that date summary judgment is appropriate.

### 3. Alabama Mini Code

The plaintiffs allegations concerning the so called Alabama Mini-Code are as follows:

> 9.) Whereas, pursuant to § 5-19-1, under the Mini-Code of Alabama, it is a material fact that borrower is entitled to know before completing the loan closing and it is a material fact that mortgage broker has an obligation to disclose to borrower. Either constructive or intentional, and misrepresentation of material facts known to the creditor, to the detriment of debtor of third parties who relied reasonably thereon.
>
> 10) Whereas, when an instrument is excuted [sic] that falls within the purview of the Alabama Mini-Code, it must conform to the requirements set forth in the Mini-Code. Contracts made in violation of the requirements set forth in the Mini-CODE are null, void, and unenforceable as a matter of public policy.

*Complaint* at 5 (emphasis in original) (citations omitted). Section 5-19-31(a) of the Alabama Code provides that only sections 5-19-1(1) and 5-19-3 of the mini-code apply to consumer credit transactions involving an interest in real property. Section 5-19-1 is merely a definitional section. Accordingly the defendant may be liable, if at all, only under Ala. Code § 5-19-3. Because that section only provides the maximum finance charges that lenders may charge for credit less than $2,000.00, it too does not apply to this transaction. Therefore, Associates cannot be liable under the Mini-Code.

### 4. Usury Laws

The plaintiff claims

11

> 11.) Whereas, pursuant to §8-8-1, the maximum rate of interest upon the loan or forbearance of money, goods, or things in action by written contract is not to exceed $8.00 upon $100.00 for one year.[8]

*Complaint* at 5 (emphasis in original). Section 8-8-1 applies to loans, "(e)xcept as otherwise provided by law. . . ." Ala. Code § 8-8-1. As to loans over $2,000.00, like the one in this case, the law provides:

> (a) Any person . . . may agree to pay such rate or rates of interest for the loan . . . as such person . . . may determine, notwithstanding any law of this state otherwise prescribing or limiting such rate or rates of interest.
>
> * * *
>
> (b) As to any such loan . . . made in compliance with subsection (a) of this section . . . such person . . . [may not] raise or claim the defense or benefit of the usury laws or any other law prescribing, regulating, or limiting such rate or rates of interest.

Ala. Code § 8-8-5(a), (b). Therefore, Ala. Code 8-8-1 does not apply and the plaintiff cannot maintain a claim that the interest rate charged him was usurious.

### 5. **Unconscionability**

The plaintiff also maintains that the loan he entered into was unconscionable. *Complaint* at 4. However, again he does not indicate to what extent and in what way he claims the contract was unconscionable. The unconscionability provision of the mini-code provides:

> With respect to a consumer credit transaction, if the court as a matter of law finds the contract or any provision of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the

---

[8] Paragraphs 12-14 also make usury claims based on this Alabama statute.

12

> unconscionable provision, or it may so limit the application of any unconscionable provision as to avoid any unconscionable result.

Ala. Code § 5-19-16. However, recission for unconscionability is an extraordinary remedy *E & W Bldg. Material Co. v. American Sav. & Loan Ass'n*, 648 F. Supp. 289, 291-92 (M.D. Ala. 1986).

"Alabama law provides no implicit standard for unconscionability. Each case must be decided on its own facts." *E & W*, 648 F. Supp. at 290 (*citing* Ala. Code § 5-19-16 (1981); *Broadway v. Household Finance Corp.*, 351 So. 2d 1373, 1377 (Ala. Civ. App. 1977). Unconscionability includes "'[a]n absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *West Point-Pepperell, Inc. v. Bradshaw*, 377 F. Supp 154, 157-58 (M.D. Ala. 1974) (quoting *Williams v. Walker-Thomas Furniture*, 350 F.2d 445 (1965)).

> The presence of a meaningful choice can only be determined by consideration of all the circumstances surrounding the transaction, and might be negated by "gross inequality of bargaining power", it being relevant to ascertain whether "each party . . . considering the obvious education or lack of it (had) a reasonable opportunity to understand the terms of the contract or (whether) the important terms (were) hidden in a maze of fine print and minimized by deceptive sales practices.

*Id.*

In this case there is no evidence that Mr. Graham was defrauded or tricked in any way. Nor is there any evidence of deception on the part of Associates. To the contrary, the unrefuted evidence is that Associates, through its agents, fully informed Mr. Graham of all of the terms and conditions of the agreement. In addition, they made all required disclosures to him at all relevant intervals. After the loan was consummated, Mr. Graham

acknowledged his right to rescind the loan, *for any reason*, within three business days. *Notice of Right to Rescind* at 1 (*See* Tab 1, Exhibit E). During that time period he had ample opportunity to review his paperwork. Still, however, he did not rescind the loan agreement. Mr. Graham, was an experienced borrower who had in fact borrowed money from Associates in the past. While it is true that his level of financial expertise may not rise to that of the employees at Associates, the law does not require that to be the case for a loan contract to be enforceable.

Even if the court were to assume that the plaintiff had somehow been duped into entering into this loan agreement, the plaintiff has offered no evidence that either the interest rate charged, or any of the other terms or conditions of the loan, were unconscionable. Even assuming the interest rate is high for this type of transaction, the defendant has charged, and the plaintiff has not disputed, that Mr. Graham is a poor credit risk. In such situations, it is not uncommon for lenders to charge higher than average interest rates. *See E & W Building Materials*, 648 F. Supp. at 291. Based on the evidence, the court determines that the loan agreement at issue in this case was not unconscionable.

### 6. The Fair Credit Reporting Act

The plaintiff's allegations under the fair credit reporting act are as follows:

15.) Whereas, defendant also violated 15 U.S.C.A. 1681, in that defendant unlawfully reported to the Tuscaloosa Credit Bureau that plaintiff owes approximately $728.00 in delinquent interest on this fraudulent and unconscionable contract. The contract was nulled and void and unenforceable at the time it was made in that it was made in violation of state and federal laws, therefore defendant did not have probable cause to even contact the Tuscaloosa Credit Bureau,

14

>   16.) Whereas, pursuant to the <u>Fair Credit Repoering Act</u>, [sic] an individual who has been damaged by any negligent or willful noncompliance with the Fair Credit Reporting Act by a supplier or user of a credit report may sue in the appropriate federal district court, without regard to the amount in controversy, in any other court of competent jurisdiction.
>
>   17.) Whereas, defendant intentionally and maliciously posted false and fraudulent misrepresentation to the Tuscaloosa Credit Bureau. As a result of defendant's publication of these defamatory statements, plaintiff has been greatly injured in his reputation and credit and have [sic] suffered great pain and anguish, embarrassment, and humiliation.

*Complaint* at 6-7 (emphasis in original). These paragraphs allege both a violation of the Act and an action for defamation.

The Fair Credit Reporting Act regulates "consumer reporting agencies" and the information that they report. *Podell v. Citicorp Diners Club, Inc.*, 859 F. Supp. 701, 704 (S.D.N.Y. 1994). A consumer reporting agency is an entity that "furnishes consumer reports to third parties." 15 U.S.C.A. § 1681(a)(f). A "consumer report" does not include "any report containing information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C.A. § 1681(a)(d). The plaintiff has only alleged that Associates reported to the Tuscaloosa Credit Bureau that he was delinquent under the loan agreement between him and Associates. That act did not constitute a consumer report under the act. Therefore, for purposes of the notice to the Tuscaloosa Credit Bureau, the defendants are not a consumer reporting agency, and cannot be liable under the Fair Credit Reporting Act.[6]

---

[6] The plaintiff, in connection with his Fair Credit Report Claims, makes a defamation allegation. The plaintiff has never alleged that he has, in fact, made the payments the defendants reported as delinquent. He merely claims the loan in question was null and void from its inception. The evidence indicates that the

15

### 7. Breach of Duty of Good Faith and Fair Dealing

The plaintiff also alleges a violation of the duty of good faith and fair dealing.[7] The Alabama Supreme court has written:

> Alabama law recognizes the general rule that "every contract does imply [an obligation of] good faith and fair dealing." *Kennedy Electric Co. v. Moore-Handley, Inc.*, 437 So. 2d 76 (Ala. 1983); *see also Harrell v. Reynolds Metals Co.*, 495 So. 2d 1381 (Ala. 1986). This obligation is described in Corbin on Contracts, § 654A(A) (Kaufman supp. 1984) (hereinafter cited as "Corbin § ---") as simply "the obligation to preserve the spirit of the bargain rather than the form," and that "[i]t is moreover a group of specific rules which evolved to insure that the basic purpose of contract law is carried out, the protection of reasonable expectations of parties induced by promise." Apparently, a majority of jurisdictions now recognize this obligation. See Corbin § 654A(B).

One facet of this obligation of good faith is explained in Corbin § 654E(A):

> "It is a basic principle that justice is not served when somebody gets something for nothing, other than by the conscious free will of the giver.... The spirit of the bargain usually contemplates that a contracting party shall not try to deprive the other of the consideration for which he bargained, though of course there are exceptions; Corbin gives the example of the bet that one's team will win a sporting contest, where vigorous attempts to deprive the other party of victory are contemplated. Besides forbidding attempts to prevent the other party from getting the consideration for which he bargained through breach or use of technical provisions contained in the contract, this principle of justice forbids attempts by the actor to get more for himself than the other party reasonably contemplated giving him at the time the contractual relationship was entered into, absent good cause. Either kind of motive to evade the spirit of the bargain is condemned...."

---

defendant's report to the Tuscaloosa Credit Bureau was entirely truthful. Truth is an absolute defense to defamation. *Battles v. Ford Motor Credit Co.*, 597 So. 2d 688, 692 (Ala. 1992). Accordingly, the defendant is entitled to summary judgment on any defamation claim.

[7] See *Complaint*, at paragraph 19.

16

*Hoffman-La Roche, Inc. v. Campbell*, 512 So.2d 725, 737 (Ala. 1987).

From the evidence presented, it is clear that there is no genuine issue of material fact and that Associates is entitled to judgment as a matter of law on this claim.

### B. Summary Judgment on the Counterclaims

The evidence establishes that the defendant is entitled to judgment as a matter of law on its counterclaim for the principal amount of $21,587.53, plus accrued interest from May 31, 1996, to December 13, 1996, in the amount of $1,916.54, plus accumulated late charges in the amount of $364.00, plus interest from December 13, 1996, at the rate of 14.31% per annum, plus attorney fees of $3,000.00.[8]

## V. Conclusion

The court, by separate order, will enter judgment in favor of the defendant and against the plaintiff. Costs will be taxed in favor of the defendant and against the plaintiff.

Done, this  17th  of June, 1997.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[8] The amount of attorney fees is less than the full 15% allowed based upon court's evaluation of the worth of the services performed.